IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 1:09cv1394 |
| PUBLIC STORAGE f/k/a SHURGARD STORAGE CENTER, INC., et al., | ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION

This declaratory judgment action is a dispute over whether the plaintiff-insurer has a duty to defend and indemnify the defendant-insured in a state court lawsuit currently underway. At issue is whether this action should be stayed in favor of the state case on grounds of the potential for entanglement of issues in the event that both state and federal matters proceed. For the reasons that follow, there is no substantial risk of issue entanglement and hence a stay is unwarranted.

### I.

Plaintiff, Zurich American Insurance Company ("Zurich American"), is an insurance company incorporated in New York and licensed to provide insurance in Virginia. During the relevant times in 2006, Zurich American issued Shurgard Storage Centers, Inc. ("Shurgard") a business liability insurance policy for bodily injury or property damage.

Defendants are (i) Public Storage and PS Business Parks, Inc. (together "PS defendants"), and (ii) Dr. Talal M. Nsouli. Public Storage is a California-based publicly traded nationwide

provider of rental storage space that acquired Shurgard and assumed its rights and liability sometime after 2006. PS Business Parks, Inc. is a California-based publicly traded affiliate of Public Storage that owns and operates commercial and industrial business parks, many of which contain Public Storage locations. Dr. Nsouli is a medical doctor who practices in Virginia and in the District of Columbia. His medical practice focuses on the diagnosis and treatment of asthma and allergies.

This dispute arises from an ongoing civil action in Fairfax County Circuit Court. In that action, filed on May 22, 2009, Dr. Nsouli alleges that Public Storage and a codefendant, Sam's Contracting, Inc., ("Sam's Contracting") are liable for the unauthorized removal and destruction of Dr. Nsouli's medical and financial records from a storage unit. Pl. Ex. 1 at 2. Specifically, Dr. Nsouli alleges that in June 2006, Shurgard hired Sam's Contracting to repair damage to a storage unit that was, at the time, under lease to Dr. Nsouli, and that in the course of performing those repairs, a Shurgard manager directed a Sam's Contracting employee to remove and destroy the records in the unit. Pl. Ex. 1 at 6. Accordingly, Public Storage having subsequently purchased Shurgard, Dr. Nsouli claims that the PS defendants and Sam's Contracting are liable under Virginia law for breach of bailment. Dr. Nsouli further alleges that Shurgard's removal and destruction of the records violated the Virginia Consumer Protection Act, Va. Code § 59.1-204, and the Virginia Commercial Code, Va. Code §§ 8.7-403(1), 8.7-204(1).

After receiving notice of Dr. Nsouli's claim, Zurich American informed the PS defendants that it would investigate the matter and defend Public Storage against the claim under

a full reservation of rights. *See* Pl. Exs. 3, 5.[1] Accordingly, counsel for Zurich American are currently defending the PS defendants in the ongoing Fairfax County Circuit Court litigation.

Zurich American filed this action on December 22, 2009, seeking a declaratory judgment that "[b]ased upon the facts presented in the [state court] Complaint filed by Dr. Nsouli, and the applicable policy language," Zurich American has "no defense or indemnity obligation under the policy for the claims asserted by Dr. Nsouli" against the PS defendants.[2] Compl. ¶¶ 72, 88, 90. Put differently, Zurich American seeks a declaration that it may withdraw from the state court litigation without breaching any contractual obligation to defend and indemnify the PS defendants.

The PS defendants filed a motion to stay this case pending the outcome of Dr. Nsouli's

---

[1] Specifically, Zurich American indicated to Public Storage in its reservation of rights letter that it did not believe its policy covered (i) intentional acts of destruction, (ii) property damage to personal property in the care, custody, or control of the insured, or (iii) disposal or destruction of a "customer's property" by the insured or another party of interest, or by their employees or agents. Zurich American further stated that any of these exemptions could apply to Dr. Nsouli's claim as alleged in his complaint. Pl. Ex. 5 at 8–9.

[2] Zurich American asserts that subject matter jurisdiction is proper pursuant to 28 U.S.C. § 1332 and the Declaratory Judgment Act, 28 U.S.C. § 2201. Of course, it is well settled that the Declaratory Judgment Act is not an independent source of federal subject matter jurisdiction, and thus the diversity statute is the only possible source of jurisdiction in this matter. *See Skelly Oil Co. v. Philips Petroleum Co.*, 339 U.S. 667, 671 (1950). With respect to whether the requirements for diversity jurisdiction are met, the complaint states that Zurich American is a citizen of New York and the PS defendants are citizens of California, and that the amount in controversy exceeds $75,000. While Zurich American does not specifically assert the citizenship of defendant Dr. Nsouli, it is assumed from the allegation that he practices in the District of Columbia and Virginia that he resides in one of the two states and, in any event, that he does not reside in New York and thus diversity exists.

lawsuit in Fairfax County Circuit Court.³ Distilled to its essence, the question presented by the motion to stay is whether deference to the previously filed state action is warranted because adjudication of the merits of this declaratory judgment suit could create an unnecessary entanglement with the ongoing state court proceedings. For the reasons set forth herein, this question is correctly answered in the negative and the motion to stay therefore must be denied.

## II.

In the normal run of federal question and diversity cases, the jurisdiction of federal courts is essentially mandatory; it yields to state court proceedings only in "exceptional circumstances." *Colo. R. Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 188–89 (1959)). But importantly, it has long been recognized that district courts have greater discretion in determining whether to proceed in a declaratory judgment action when a parallel state proceeding is ongoing. *See Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Am. Auto. Ins. Co. v. Freundt*, 103 F.2d 613, 619 (7th Cir. 1939); *Md. Cas. Co. v. Consumers Fin. Serv. of Pa.*, 101 F.2d 514, 515 (3d Cir. 1938); *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 323–24 (4th Cir. 1937).⁴ More recently, the

---

³ Dr. Nsouli appeared by counsel at the motion hearing and indicated that he did not have a position on the PS defendants' motion. It is, moreover, unclear whether Dr. Nsouli is properly a defendant in this action because Zurich American seeks declaratory relief on the scope of its obligations under the insurance policy, and Dr. Nsouli is neither a party nor an intended third party beneficiary to that agreement.

⁴ In explaining why trial courts' discretion to decline to hear declaratory judgment proceedings, the Fourth Circuit in *Aetna v. Quarles* distinguished between the exercise of jurisdiction and the traditional discretion afforded to courts in determining whether to grant equitable relief such as declarations of the rights and legal relations of the parties. 92 F.2d at 324. In this regard, the *Quarles* panel concluded that trial courts could appropriately deny the declaratory remedy "where another court has jurisdiction of the issue, where a proceeding

Supreme Court affirmed the vitality of these early cases in *Wilton v. Seven Falls Co.*, 515 U.S. 277, 289–90 (1995) (holding that district court did not abuse its discretion in staying declaratory judgment action pending outcome of parallel state proceeding).

Yet, clear as it is that district courts have discretion to stay or dismiss declaratory judgment actions when parallel state proceedings are underway that "present[] opportunity for ventilation of the same state law issues," *id.* at 290, it is equally clear that this discretion is by no means unfettered. Indeed, allowing unfettered discretion would not give effect to Congress's clear intention in enacting the Declaratory Judgment Act to make the declaratory remedy available, as a general matter, in federal lawsuits.[5] Thus, absent a good reason not to exercise jurisdiction, federal courts should hear declaratory judgment actions and provide declaratory relief where it is warranted by law and by the facts and circumstances of a particular case. *See Brillhart*, 316 U.S. at 495–96 (reversing dismissal of declaratory judgment action because district court failed adequately to consider whether pending state court proceeding would decide same issue).

---

involving identical issues is already pending in another tribunal, where a special statutory remedy has been provided, or where another remedy will be more effective or appropriate under the circumstances." *Id.* at 325–26. In such circumstances, then, because the requested relief was unavailable, the action was appropriately stayed or dismissed. In any event, this jurisdiction-remedy distinction is a mere historical footnote, for the Supreme Court in *Brillhart v. Excess Insurance Co.* framed the matter, without elaboration, as a purely jurisdictional one. 316 U.S. at 494–95.

[5] *See Aetna v. Quarles*, 92 F.2d at 324 (concluding that discretion to grant declaratory relief "should be liberally exercised to effectuate the purposes of the statute"); *see also Johnson v. United States*, 529 U.S. 694, 707 n.9 (2000) ("Nothing is better settled, than that statutes should receive a sensible construction, such as will effectuate the legislative intention.") (quoting *In re Chapman*, 166 U.S. 661, 667 (1897)).

Consistent with this principle, the Fourth Circuit has held, in circumstances similar to those presented here, that district courts should not stay or dismiss suits seeking declarations that insurers had no duty to indemnify or defend their insured in pending state court proceeding. In *Nautilus Insurance Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376–77 (4th Cir. 1994), some four months after a product liability action was filed against the insured in Maryland court, Nautilus, the insurer, filed a federal court action requesting a declaration (i) that the insurance policy in issue was void due to material misrepresentations and omissions in the application for coverage, and (ii) that the claims in the state court action were, in any event, outside the scope of the policy's coverage. After seven months of "extensive" discovery in the federal declaratory action and only one week before trial, the district judge granted a motion to dismiss the action in light of the pending state court action. *Id.* at 374. On appeal, the Fourth Circuit held that district courts considering whether to stay a declaratory judgment action should consider four factors: (i) whether the state has a strong interest in having the issues decided in its courts; (ii) whether the state courts could resolve the issues more efficiently than the federal courts; (iii) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (iv) whether the federal action is mere "procedural fencing." *Id.* at 377. Applying these factors, the *Nautilus* panel reversed the district court's dismissal of the action, finding that on the facts of that case, "considerations of federalism, efficiency, and comity are not sufficiently compelling to overcome the strong federal interest in awarding declaratory relief that will serve the salutary purposes of the Declaratory Judgment Act." *Id.* at 380.

The vitality of the *Nautilus* factors is beyond serious argument. Since that decision, and after the Supreme Court's interceding decision in *Wilton*, the Fourth Circuit has twice held that district courts abused their discretion in abstaining from ruling on declaratory judgment actions in similar factual circumstances.[6] In one of those two cases, *Penn-America Insurance Co. v. Coffey*, 368 F.3d 409, 413–14 (4th Cir. 2004), the Fourth Circuit held that the *Nautilus* abstention factors were not satisfied in a declaratory judgment action seeking determination of the insurer's Virginia law duties to defend and indemnify the insured in a Virginia state court action. In that case, the underlying state court action was a tort suit brought against a restaurant over an incident in which the restaurant's employees allegedly became embroiled in a violent fight with patrons in the parking lot outside the establishment. The employees allegedly struck the patrons and their automobile with their fists and with metal pipes, leading one of the patrons to lose control of the vehicle and strike a bystander. The bystander sued the occupants of the vehicle and the owner of the restaurant, alleging negligent and intentional torts. Penn-America undertook to defend the restaurant, its insured, and asserted, among other defenses, (i) that the bystander's injuries were not proximately caused by the restaurant employees' conduct, and (ii) that the alleged conduct was outside the scope of the relevant policy's coverage. On these facts, the Fourth Circuit concluded that the mild risk of entanglement with the state court proceedings—and the absence

---

[6] *See Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, No. 09-1049, slip op. at 5–6 (4th Cir. Dec. 4, 2009) (applying *Nautilus* in declaratory suit over duty to defend in Florida court under policy governed by Virginia law); *Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 413–14 (4th Cir. 2004) (applying *Nautilus* in declaratory suit over duties to defend and indemnify in Virginia court under policy governed by Virginia law). The Fourth Circuit has also it has also held that a district court did not abuse its discretion in denying a motion to stay on similar facts. *See United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493–94 (4th Cir. 1998).

of any other circumstances favoring a stay—compelled the conclusion that the district court abused its discretion in dismissing the action. *Id.* at 414–15.

As with *Penn-America*, application of the *Nautilus* factors to the facts of this case reveals no sound basis for staying this action pending resolution of the state court proceeding. The first *Nautilus* factor requires consideration of the state's interest in having the issues decided in its courts. As the Fourth Circuit held in *Penn-America*,

> to defer to the state court ... case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state ... case, and (2) [the insurer] is not a party to the state case. Moreover, as we have observed, the State's interest is "not particularly significant" where any state law issues are standard and "unlikely to break new ground."

*Penn-America Ins. Co. v. Coffey*, 368 F.3d 409, 414 (4th Cir. 2004) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 494 (4th Cir. 1998)). This rationale is equally applicable to this case. As in *Penn-America*, the insurer in this case is not a party to the state court litigation and the coverage issue is not a disputed issue in that action. Moreover, as the Fourth Circuit noted, the duty-to-defend question is a well settled a matter of Virginia law. *Id.* at 413 (citing *Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990). The first factor, therefore, does not favor a stay of this action.

Nor does the second *Nautilus* factor—whether the state court could resolve the issues more efficiently—support granting the motion to stay. As noted, Zurich American is not a party to the state court action and the coverage matters are not in issue there. Thus, a state court would only decide the matter in some as-yet-unfiled action or if Zurich American chose to intervene in the underlying action, to the extent intervention would be permitted under Virginia

procedural rules.[7] Thus, as in *Penn-America*, abstention from deciding this matter would not advance any interest in judicial efficiency and therefore, this factor does not support the PS defendants' motion.

The third factor—whether deciding the federal action would cause unnecessary entanglement with state court proceedings—presents the closest question, but ultimately, it also does not support abstention. Zurich American seeks a determination of whether it is obligated to defend the PS defendants in the state court action. Under Virginia law, the scope of the duty to defend is analyzed under the "eight corners" test—in other words, the question is answered by examining the four corners of the complaint and the four corners of the insurance policy.[8] If the complaint alleges facts, some of which, if proven, would fall within the scope of insurance coverage, then the insurer is obligated to defend the insured. *See Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990). On the other hand, if the complaint's allegations fall

---

[7] *See Penn-America*, 368 F.3d at 414 (questioning whether intervention by the insurer would be allowed in the Virginia tort action).

[8] The PS defendants claim that Virginia law governs the insurance contract because the policy was delivered to the insured in Virginia, and, under Virginia law, "the law of the place where an insurance contract is written and delivered controls issues as to its coverage." *Buchanan v. Doe*, 431 S.E.2d 289, 291 (Va. 1993). Zurich American asserts that the law of the state of Washington may apply because Shurgard—the named insured—is located there. In any event, because Washington state appears to follow the same rule as Virginia, the choice of law question need not be reached nor decided at this time. *Compare Campbell v. Ticor Title Ins. Co.*, 209 P.3d 859, 861 (Wash. 2009) ("[T]he duty to defend is triggered if the insurance policy *conceivably* covers the allegations in the complaint, whereas the duty to indemnify exists only if the policy *actually covers* the insured's liability.") (quoting *Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (2007)) *with Brenner v. Lawyers Title Ins. Corp.*, 397 S.E.2d 100, 102 (Va. 1990) ("The obligation to defend arises whenever the complaint against the insured alleges facts and circumstances, some of which, if proved, would fall within the risk covered by the policy."). It is assumed, therefore, for purposes of ruling on the PS defendants' motion to stay, that the PS defendants are correct and Virginia law applies to interpretation of the insurance policy.

outside the scope of coverage, then there is neither a duty to defend nor a duty to indemnify. *See Penn-America*, 368 F.3d at 413. Thus, determining whether Zurich American has duties to defend and indemnify the PS defendants merely requires examining the complaint in the state court action and deciding whether any of those factual allegations, if sufficiently proven, would fall within the scope of the insurance policy, or whether, instead, they fall within one of the asserted policy exclusions for (i) intentional acts of destruction, (ii) property damage to personal property in the care, custody, or control of the insured, or (iii) disposal or destruction of a "customer's property" by the insured or the insured's agents. Put another way, it is not necessary to "make independent findings as to what actually occurred," but rather, it is necessary only to "decide whether the complaint's allegations, if proved, would bring the factual scenario within the scope of the exclusion[s]." *Penn-America*, 368 F.3d at 413. Answering this question will not require determination of any ultimate issues essential to the state court litigation. With the issue thus presented, it is pellucidly clear that the danger of entanglement with the state court proceedings is minimal, if indeed at all present.

Finally, the fourth factor requires consideration of whether Zurich American, by bringing this federal declaratory judgment suit, is engaging in procedural fencing. PS Defendants do not suggest that Zurich American is doing so, nor is there any reason to believe that Zurich American brought this action to gain a tactical advantage in the state court suit. To the contrary, Zurich American seeks resolution of a live controversy between the parties over the coverage and scope of an insurance policy. Thus, it is clear that this fourth factor—like the first three—does not support abstention in this case. Accordingly, the PS defendants have not shown

that they are entitled to a stay of this proceeding.

### III.

The PS defendants' motion to stay this declaratory judgment action must be denied. This conclusion is compelled by consideration of the four *Nautilus* factors, of the relevant Fourth Circuit cases applying *Nautilus*, and of *Nautilus*'s underlying rationale that courts must exercise restraint in declining to hear declaratory judgment suits in order to effectuate the purpose of the Declaratory Judgment Act. Because (i) the state's interest in resolving this dispute is minimal, (ii) judicial economy will not be served by staying this action pending the outcome of the state court proceeding, (iii) there is little or no risk of entanglement with the ongoing state action, and (iv) this suit was not brought for purposes of procedural fencing, this matter cannot be stayed at this time and shall proceed.

An appropriate Order will issue.

Alexandria, Virginia
March 17, 2010

/s/
T. S. Ellis, III
United States District Judge